UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

Nº 09-cv-5601(JFB)(ARL)
_____

IN THE MATTER OF THE PETITION OF
PAUL FOGARTY, AS OWNER OF A 2004
33 FOOT MAXUM MARINE VESSEL,
FOR EXONERATION FROM AND
LIMITATION OF LIABILITY
_____

**MEMORANDUM AND ORDER**
March 30, 2012.
_____

Joseph F. Bianco, District Judge:

Petitioner Paul Fogarty ("Fogarty") brought an action for exoneration from and limitation for liability from Patricia McGrath regarding an incident which took place on Fogarty's boat on July 4, 2009. Claimant Patricia McGrath responded by asserting causes of action for negligence and negligence *per se*. Her husband, Patrick McGrath[1] responded and asserted a cause of action against Fogarty for loss of consortium. Claimants seek compensatory damages, punitive damages, costs and attorneys' fees. These claims stem from an Independence Day party on July 4, 2009 on Fogarty's boat, a thirty-three foot Maxum cruiser, during which Patricia McGrath fell and was injured as she tried to access the boat's restroom.

Having held a bench trial, the Court now issues its findings of fact and conclusions of law, as required by Federal Rule of Civil Procedure 52(a). After carefully considering the evidence set forth at trial (including the credibility of the witnesses), the arguments of counsel and the controlling law on the issues presented, the Court finds that claimants have failed to carry their burden of proving, by a preponderance of the evidence, that Fogarty was negligent. In sum, the Court finds, *inter alia*, the following facts: (1) prior to the July 4th party, Patricia McGrath had been on Fogarty's boat and knew that the restroom was located in the cabin of the boat; (2) by the design of the boat, a person on the front deck of the boat could gain access to the bathroom by walking through an opening in the windshield and down a series of steps into the cockpit/cabin area; (3) during the July 4th party, Patricia McGrath was on the front deck of the boat, in close proximity to Fogarty, and decided to head towards the steps to access the restroom; (4) a guest was seated on the front deck of the boat in front of entrance to the windshield and steps; (5) rather than asking the guest to move to the side so that she could gain access to the

---

[1] Patricia McGrath and Patrick McGrath will collectively be referred to as the "claimants" or the "McGraths".

steps, Patricia McGrath attempted to playfully sit on, straddle, and then climb over the guest, and consequently fell as she tried to find the step with her foot; and (6) the courtesy lights and step lights on the boat were on, and never turned off, during the party. To the extent that Patricia McGrath or other witnesses testified differently as to the above-referenced facts, or other facts outlined below, the Court found such witnesses not to be credible in light of their demeanor and the totality of the evidence. In particular, the Court found the testimony of Fogarty, Gilbert Cintron, Carlos Cintron, and Joanna Stack to be fully credible, including the circumstances that led to Patricia McGrath's fall.[2]

Based upon the above-referenced facts and other facts set forth in this Memorandum and Order, the Court concludes that Fogarty was not negligent in any way in the maintenance, operation, or control of his boat on July 4, 2009. Although claimants argue, among other things, that Fogarty was negligent in failing to provide adequate lighting (including flashlights) to his guest, in serving alcohol to his guests, and allowing a guest to sit on the front deck of the boat where the opening was in the windshield for the steps down to the restroom. The Court disagrees. The Court concludes that Fogarty exercised reasonable care by, among other things, by keeping the courtesy lights and step lights on for the area leading to the restroom. It was not unreasonable, under the particular circumstances here, for Fogarty to allow a guest to sit on the deck in the area near the gap to the steps because one would expect that, if someone (such as Patricia McGrath) wanted to go down the steps, the guest would voluntarily move, or the guest would ask the person to move to the side so that the claimant could access the steps. A boat owner would not reasonably expect that Patricia McGrath, or anyone else, would straddle the guest and attempt to somehow put her foot on a step leading down to the restroom. In short, the Court concludes that Fogarty exercised reasonable care for his guests, including Patricia McGrath, under the circumstances. Claimants have failed to prove their claim of negligence and judgment in Fogarty's favor is warranted.[3]

I. BACKGROUND

Petitioner Fogarty brought a complaint on December 22, 2009 asserting exoneration from and limitation for liability from Patricia McGrath. On March 2, 2010, claimants answered and asserted claims for negligence and loss of consortium. On March 17, 2010, Fogarty filed an answer to those claims. The parties then undertook discovery, which was completed by January 26, 2011. The Amended Pretrial Order was filed on March 3, 2011. Petitioner Fogarty took the position that this was an admiralty action to be tried by the Court. Although claimants initially took the position that the negligence claims should be tried to the jury, claimants' counsel submitted a letter to the Court, dated March 28, 2011, withdrawing any request for a jury trial. Thus, both sides agreed that the negligence claims should be tried without a jury. On July 25, 2011, claimants submitted their proposed findings of fact and conclusions of law. On July 28, 2011, Fogarty submitted his proposed findings of fact and conclusions of law.

---

[2] Although their testimony differed with respect to certain minor details, it was consistent and credible with respect to all of the material facts relied upon by the Court.

[3] The Court does not address the damages evidence in light of its finding of no liability.

A bench trial took place between August 2, 2011 and August 4, 2011.[4] Erica Johnson, Paul Fogarty, Patrick McGrath, Patricia McGrath, Ronald Rosen, DDS, and Robert Marzigliano ("Marzigliano") testified for the McGraths during their case-in-chief. Gilbert Cintron, his twin brother Carlos Cintron, Joanna Stack and Paul Fogarty testified for Fogarty. These individuals, with the exception of Ronald Rosen, claimants' medical expert, were all guests on Fogarty's thirty-three foot Maxum cruiser on the date in question.

Fogarty also submitted a letter to the Court on August 10, 2011. The Court has fully considered all of the evidence presented by the parties, as well as their written submissions. Below are the Court's Findings of Fact and Conclusions of Law.

## II. FINDINGS OF FACT

The following section constitutes the Court's Findings of Fact[5] pursuant to Federal Rule of Civil Procedure 52(a)(1). These Findings of Fact are drawn from witness testimony at trial ("Tr.") and the parties' trial exhibits ("Tr. Ex.").[6]

### A. Prior Relationship Between Fogarty and the McGraths

Fogarty was friends with Patricia McGrath and Patrick McGrath and they socialized together about two to three times a year. (Tr. Aug. 2, 2011, PM2, at 15-16.)[7] Before the incident, Patricia McGrath had been on Fogarty's boat about three times. (*Id.* at 15.) The two families also exchanged gifts at various times. (*Id.* at 16-17; Tr. Aug. 4, 2011, AM1, at 4.)

### B. Fogarty's Boat and Boating Experience

Fogarty was the owner of a thirty-three foot Maxum cruiser, the boat on which the incident occurred (the "boat"). (Tr. Aug. 2, 2011, AM2, at 28.) Fogarty also previously owned a twenty-eight or twenty-nine foot boat for two years. (*Id.* at 28, 31.) Fogarty paid approximately $170,000 for the Maxum cruiser in 2005. (*Id.* at 28.) Fogarty spent under 200 hours on the boat over the previous four years and used the boat slightly more than ten times. (*Id.* at 29.) Fogarty never took a boating course. (*Id.* at 31.) Prior to the incident, Fogarty only looked at the owner's manual once. (*Id.* 31-32.) The boat had sixteen adult lifejackets and three for children. (*Id.* at 35.)

### C. Boat Conditions and the Independence Day Party on July 4, 2009

Fogarty had guests on his boat on July 4, 2009, to watch the fireworks display while tied to another boat. (*Id.* at 3, 32-33.) Fogarty helped Patricia McGrath onto the boat by holding her arm. (Tr. Aug. 2, 2011, PM1, at 52.) Alcohol was available at a party that some of the guests attended before boarding the boat and on the boat. (Tr. Aug. 2, 2011, AM2, at 37-38.) There were approximately sixteen people on board the

---

[4] On August 3, 2011, Fogarty made an oral motion for judgment as a matter of law. Decision was reserved by the Court. In light of the Court's decision in favor of Fogarty on the merits, the motion for judgment as a matter of law is denied as moot.

[5] To the extent that any finding of fact reflects a legal conclusion, it shall to that extent be deemed a conclusion of law and vice-versa.

[6] The trial exhibits include, among other things, a series of photographs of the boat which the Court has fully considered.

[7] The trial transcript pages are renumbered starting at "1" for each session. There were up to four sessions each day of the bench trial: AM1, AM2, PM1, PM2. Accordingly, citations to the transcript reflect both the date and session the Court is referring to. As an example, the above citation refers to testimony which took place on August 2, 2011, during the second PM session, from pages 15 to 16 of the record.

boat on the night of the incident. (*Id.* at 28.) All the guests on the boat on the night of the incident had been on the boat before, with the exception of Marzigliano who had never been on the boat before the night of incident. (*Id.* at 46.) At the time of Patricia McGrath's injury on Fogarty's boat, Patrick McGrath along with the McGraths' daughter (and others) were on the boat tied to Fogarty's boat. (Tr. Aug. 2, 2011, PM1 at 18-21.)

1. Lighting on the Boat

Fogarty testified that the courtesy lights and step lights were on and were never turned off during the party. (Tr. Aug. 2, 2011, AM2, at 48, 60-61; Tr. Aug. 4, 2011, AM1, at 9-12.) Carlos Cintron explained that the steps were illuminated on the night of the fall. (Tr. Aug. 3, 2011, AM2, at 58-59.) Gilbert Cintron explained that the lights were on, including the step lights, after the boat left the dock. (*Id.* at 23.) Fogarty did not want to replace the boom lights, which were out, and the boat did not have a brightness changer. (Tr. Aug. 4, 2011, AM1, at 34, 37-38.) The step lights aimed straight onto the steps themselves. (*Id.* at 39.) Carlos Cintron also testified that he "saw the lights on, enough for me to see what was going on." (Tr. Aug. 3, 2011, AM2, at 69-70.)

Gilbert Cintron also testified that both the lighting on the upper deck and on the bottom of the boat were on. (*Id.* at 1, 9.) Carlos Cintron explained that Fogarty's Exhibit E, a compilation of three pictures of Fogarty's boat, showed the lights over the steps in the same way they were on July 4, 2009. (*Id.* at 65; Tr. Ex. E.) Carlos Cintron also testified that the lights were on after Patricia McGrath fell. (*Id.* at 69.) Carlos Cintron testified that, during the incident itself, there were "lights down there." (*Id.* at 65.)

Conversely, Erica Johnson testified that she "yelled to put the lights on" after Patricia McGrath's fall, and that the boat went from being dark to being lighted. (Tr. Aug. 2, 2011, AM2, at 7-8, 10.) Patrick McGrath testified that he heard someone yell turn on the lights when his wife fell, and that the lights were not on when he got onto the boat after his wife fell. (Tr. Aug. 2, 2011, PM1, at 23.) However, on cross examination, Patrick McGrath stated that the lights may have been on when his wife fell. (*Id.* at 41.) Patricia McGrath stated that there were no lights but admitted she would not normally go down stairs if lights were not on. (Tr. Aug. 2, 2011, PM2, at 46.) Joanna Stack was unsure if the lights under the spoiler were on. (Tr. Aug. 3, 2011, AM2, at 49.)

After carefully considering the evidence introduced by both parties at trial, the Court finds that the courtesy lights and step lights were never turned off during the party and were on at the time of Patricia McGrath's fall. Moreover, based upon the testimony and exhibits, the Court concludes that the step area of the boat was sufficiently lighted at the time of Patricia McGrath's fall.

2. Interactions Prior to the Fall

Patricia McGrath testified that, before boarding the boat, she went to Laura Johnson's house for an annual 4th of July party and drank a Margarita that she did not finish. (Tr. Aug. 2, 2011, PM1, at 47-48.) Joanna Stack saw Patricia McGrath drinking something on the dock on the way to the boat, but was unsure of what the drink was. (Tr. Aug. 3, 2011, AM2, at 47.)

Fogarty testified that Patricia McGrath was pretty familiar with the boat. (Tr. Aug. 2, 2011, PM1, at 5.) Fogarty testified that Patricia McGrath was not drunk when she

came on the boat, and that he would not have let her come on the boat if she was. (Tr. Aug. 4, 2011, AM1, 32.) Gilbert Cintron testified that Patricia McGrath was drinking something, and that she smelled like alcohol while on the boat. (Tr. Aug. 3, 2011, AM2, at 11-12.)

Gilbert Cintron testified that, at the Johnson party prior to boarding the boat, Patricia McGrath was acting flirtatious with Fogarty, as well as with himself and his twin brother, Carlos Cintron. (*Id*. at 69.) Fogarty testified that Patricia McGrath nibbled on his neck and, when he asked her if she was crazy because her husband was 20 feet away, she moved on to the Cintron twins. (Tr. Aug. 4, 2011, AM1, at 15.) Gilbert Cintron testified that, at the Johnson party, Patricia McGrath came over to him and, in the presence of his girlfriend, began flirting by touching his arm and chest, and then did the same thing to his twin brother. (Tr. Aug. 3, 2011, AM1, at 69-70.) Carlos Cintron, a veterinarian who knew Fogarty socially and in his capacity as a veterinarian, also testified that Patricia McGrath was flirtatious with him at the party: "It was a little awkward. She was a little flirtatious, a little touchy for somebody that I met for the first time. . . . Grabbing my arm. She touched my chest. A little too much touching for like somebody I met for the first time." (Tr. Aug. 3, 2011, AM2, at 54, 56.) Joanna Stack, who is Gilbert Cintron's girlfriend, similarly testified that Patricia McGrath was "grabbing their [Gilbert and Carlos'] arms in awe of their muscles" and "[i]t was a little embarrassing." (*Id*. at 35.)

On the Fogarty boat, during the fireworks, there were a number of guests on the front deck of the boat watching the fireworks. (*Id*. at 13.) Patricia McGrath was sitting in close proximity to Fogarty near the center of the boat. (Tr. Aug. 4, AM1, at 13.) Gilbert Cintron testified that Patricia McGrath was caressing Fogarty's thigh, giggling, and being flirtatious. (Tr. Aug. 3, 2011, AM2, 17.) Joanna Stack similarly testified that Patricia McGrath was stroking Fogarty's arm, biting his ear and giggling. (*Id*. at 37.) Carlos Cintron also testified that Patricia McGrath and Fogarty were touching, sitting really close, whispering in one another's ear and laughing. (*Id*. at 60-61.) Fogarty testified that, as they were watching the fireworks while sitting close together on the front deck, Patricia McGrath then began flirting with him:

> [t]he fireworks were going on and she cozied up beside me, and I was looking the opposite way to the fireworks we went to see, and she's lying on my leg, she's lying on my thigh, so the pillow that I had, I put between me and her, and she was goofing around a little bit to where she's nibbling and she's whispering in my ear, and the only thing that I was scared s***less was that she was going to realize that [her husband] was on the other boat.

(Tr. Aug. 4, 2011, AM1, at 15.)

Patricia McGrath testified that she was happy, but not giddy or flirtatious. (Tr. Aug. 2, 2011, PM1, at 50-51.) She denied any physical contact with Fogarty, but agreed that she sat next to him on the front deck. (*Id*. at 51.) Marzigliano testified that he did not see Patricia McGrath touching any males. (Tr. Aug. 3, 2011, AM1, at 62.) After sitting with Fogarty, Patricia McGrath left to go to the restroom on the boat. (Tr. Aug. 4, 2011, AM1, at 16.)

Based upon the evidence at trial, the Court concludes that Patricia McGrath was

sitting in close proximity to Fogarty near the center of the boat when she moved toward the windshield and steps to go down and use the restroom in the cockpit/cabin area.[8]

### 3. Positioning and Actions Immediately Prior to the Incident

Based on the evidence from trial detailed *infra*, the Court finds that the pathway to the restroom on Fogarty's boat was not inherently dangerous. In particular, with respect to the events described below, the Court found the account of witnesses Fogarty, Carlos Citron, Gilbert Citron, and Joanna Stack to be fully credible.

The restroom was located in the boat and down a flight of steps which were covered by a "bi-fold door" (Tr. Aug. 2, 2011, AM2, at 46.) The bi-fold door, which had a railing on top of it, was open when the accident occurred. (*Id*. at 47; Tr. Ex. 3; Tr. Ex. 7.) In order to get to the steps to the restroom, a passenger must climb through an opening in the windshield on the upper deck. (*Id*. at 40-41.) Patricia McGrath testified that the hatch was closed, and the door to the cabin was open. (Tr. Aug. 2, 2011, PM2, at 49.) Fogarty testified, however, that the hatch was open. (Tr. Aug. 2, 2011, PM1, at 5; Tr. Aug. 4, 2011, AM1, at 44; Exhibit H.) Patricia McGrath did not know what position the rail, which was attached to the hatch door to the cabin, was in when she fell, only that "it wasn't there when I reached for it." (Tr. Aug. 2, 2011, PM2, at 41.) The Court finds that the hatch was open.

---

[8] There is some dispute about whether Patricia McGrath crawled or walked to the area of the steps. The Court, however, need not resolve this factual dispute because the differing testimony on this issue does not impact the Court's views of the credibility of the witnesses, and is immaterial to the legal and factual issues being considered.

In-between the windshield, there were a series of two steps one must go down to get to the lower deck where the cockpit is. (Tr. Aug. 2, 2011, AM2, at 40-45; Tr. Ex. 4; Tr. Ex. 5.) Joanna Stack testified that she did not have any trouble getting up the steps because "[i]t was not a climb. It's just two little stairs. It wasn't that difficult." (Tr. Aug. 3, 2011, AM2, at 36.) Fogarty explained that all the guests had a "clear shot" at the steps. (Tr. Aug. 2, 2011, AM2, 61.) After the steps, there are a second series of steps to get into the cabin, where the restroom was located. (*Id*. at 44-45; Tr. Ex. 5.) As Patricia McGrath conceded, she knew where the restroom was from previous visits on the boat, and Fogarty had pointed out the location of the restroom to her. (Tr. Aug. 2, 2011, PM1, 57.)

Marzigliano testified that the boat was a fairly steady platform, and that there was not any severe motion. (Tr. Aug. 3, 2011, AM1, at 57-58.) Patricia McGrath testified that "the boat was kind of tilted to the left" but that it was not so unstable that she would lose her balance. (Tr. Aug. 2, 2011, PM1, at 57-58.)

Gilbert Cintron testified that Patricia McGrath straddled the gentleman seated near the windows. (Tr. Aug. 3, 2011, AM2, at 7.) Joanna Stack saw Patricia McGrath lower herself as if to sit on the person between the doorways and then turned away, and also testified that Patricia McGrath was sitting in someone's lap between the entryway to the steps that led to the lower deck. (*Id*. at 37-39.) Carlos Cintron testified that Patricia McGrath straddled the gentleman between the windshields, was laughing and was in a "riding position." (*Id*. at 63.) Fogarty testified that Patricia McGrath straddled Marzigliano, put her leg over him and was grinding on him "goofingly." (Tr. Aug. 4,

2011, AM1, at 16.) Joanna Stack heard Patricia McGrath say "oh stop it," and saw Marzigliano and Patricia McGrath tickling one another while Patricia McGrath was on Marzigliano's lap. (Tr. Aug. 3, 2011, AM2, at 40, 51-52.) Marzigliano, however, denied that Patricia McGrath grinded her pelvis on him, and testified they had worked together 20 years earlier. (Tr. Aug. 3, 2011, AM1, at 48.)

Fogarty never asked Marzigliano to move from where he was sitting. (Tr. Aug. 4, 2011, AM1, at 18; Tr. Aug. 2, 2011, AM2, at 62.) Patricia McGrath testified that Marzigliano never sat in the entrance to go down the stairs, and that nobody was on the steps between the deck and the restroom, which is down the second set of steps in the cabin. (Tr. Aug. 2, 2011, PM2, at 28, 47.) Marzigliano testified he was sitting in between the windshield and that there was about four feet between himself and the stairs. (Tr. Aug. 3, 2011, AM1 at 49, 60.)

Patricia McGrath testified that she was wearing a long "peasant skirt" and not wearing her shoes when the incident occurred. (Tr. Aug. 2, 2011, PM2, at 45; Tr. Aug. 2, 2011, PM1, at 48.) Patricia McGrath testified that she did not recall her shoes being in her hand. (Tr. Aug. 3, 2011, AM1, 8.) Marzigliano testified that Patricia McGrath had "shoes or sandals in her hand as she was walking towards me." (Tr. Aug. 3, 2011, AM1, at 52.) Marzigliano later testified that Patricia McGrath "threw [the shoes or sandals] down before she was trying to get around me." (*Id*. at 56-57.)

Based upon the trial evidence, including an evaluation of the credibility of the witnesses, the Court finds that (1) Marzigliano was seated on the front deck of the boat in front of entrance to the windshield and steps, (2) rather than asking the guest to move to the side so that she could gain access to the steps, Patricia McGrath attempted to playfully sit on, straddle, and (as discussed below) then climb over the guest.[9]

D. Patricia McGrath's Fall

Patricia McGrath wanted to get to the restroom past Marzigliano and Marzigliano offered her a hand. (*Id*. at 51.) Fogarty testified that Marzigliano initially held out his hand to help Patricia McGrath go down the steps, but instead of taking it she straddled him for about thirty or forty seconds. (Tr. Aug. 4, 2011, AM1, at 17.) Fogarty also testified that, as Patricia McGrath got off Marzigliano, "[h]er left leg was on the other side, like my side of the boat. . . ." (Tr. Aug. 4, 2011, AM1, at 17.) Fogarty testified that she asked for a shove, Marzigliano shoved her, and Patricia McGrath subsequently fell. (Tr. Aug. 2, 2011, PM1, at 11.)

Patricia McGrath testified that she leaned in before the fall and then everything went black and she became unconscious for a period of time. (*Id*. at 59-60; Tr. Aug. 3, 2011, AM1, at 6.) Marzigliano was unsure if Patricia McGrath tripped or what exactly happened when she fell. (*Id*. at 51.) Patricia McGrath testified, "I remember reaching for the handrail that was there when I went up. And it wasn't there. And I just felt my body flying forward." (Tr. Aug. 2, 2011, PM1, 59.) Patricia McGrath did not grab the windscreen or windshield. (Tr. Aug. 2, 2011, PM2, at 47.) She stated the reason she did not grab the windscreen was "because we were told not to lean on it. So I just didn't reach for it." (Tr. Aug. 3, 2011, AM1,

---

[9] To the extent other witnesses, including Patricia McGrath and Marzigliano testified contrary to these facts, the Court found such testimony not to be credible.

7

at 7.) Fogarty testified that Patricia McGrath fell over sideways, her head went down, and she landed with a thump. (Tr. Aug. 2, 2011, PM1 at 2; Tr. Aug. 4, 2011, AM1, at 18.) As Patricia McGrath fell, Marzigliano saw her teeth fall out of her mouth. (Tr. Aug. 3, 2011 AM1, at 58-59.)

Based upon the trial evidence, including an evaluation of the credibility of the witnesses, the Court finds that, as Patricia McGrath straddled Marzigliano and then attempted to climb over him to gain access to the steps, he attempted to assist her as she put one of her legs down in search of the step, and then she fell.

III. BURDEN OF PROOF

Pursuant to the Limitation of Liability Act, Title 46 U.S.C. § 30501 *et seq.*, an owner of a vessel may seek to limit its liability by filing a complaint in federal district court. In particular, the Limitation Act allows a vessel owner "to limit liability for damage or injury, occasioned without the owner's privity or knowledge, to the value of the vessel or the owner's interest in the vessel." *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 446 (2001). Although the Limitation Act is generally invoked by vessel owners who are engaged in maritime commerce, the Limitation of Liability Act also may be invoked by pleasure craft owners. *See In re Cornfield*, 365 F. Supp. 2d 271, 276 (E.D.N.Y. 2004) (citing *Kroemer v. Guglielmo, (In re Guglielmo)*, 897 F.2d 58, 59-60 (2d Cir. 1990)), *aff'd*, 156 F. App'x 343 (2d Cir. 2005).

"Where, as here, a negligence claim is filed in response to a petition for limitation or exoneration, a claimant carries the initial burden of establishing that negligence caused the injury." *In re Cornfield*, 365 at 276. Plaintiffs bear the burden of offering evidence in support of the allegations set forth in the complaint and proving those allegations by a preponderance of the evidence. *See Fernandez v. Chios Shipping Co.*, 542 F.2d 145, 155 (2d Cir. 1976) (plaintiff bears burden of proof by preponderance of the evidence in maritime tort action); *accord Cigna Property & Cas. Ins. Co. v. Bayliner Marine Corp.*, No. 92 Civ. 7891 (AGS), 1995 WL 125386, at *11 (S.D.N.Y. Mar. 22, 1995); *Dunn v. Southern Charters, Inc.*, 539 F. Supp. 661, 670 (E.D.N.Y. 1982).

IV. CONCLUSIONS OF LAW

Patricia McGrath submits that Fogarty was negligent in not providing sufficient lighting to the guests on his boat and in not giving sufficient guidance to Patricia McGrath in her trip to the restroom. Patricia McGrath further alleges that Fogarty failed to exercise reasonable or ordinary care to protect the passengers from injury because he failed to warn the passengers of latent dangerous conditions on his boat and that the boat was not seaworthy. She further asserts that it was negligent to allow a guest to sit in the area of the windshield leading to the steps to the restroom. Patricia McGrath contends that all of these actions and omissions caused Patricia McGrath's fall and injuries. For the reasons set forth below, the Court finds that claimants have failed to prove, by a preponderance of the evidence, that Fogarty was negligent in any way in the maintenance, operation, or control of his boat on July 4, 2009. Specifically, claimants have failed to show, by a preponderance of the evidence, that Fogarty had knowledge, either actual or constructive, of a risk-creating condition that caused Patricia McGrath to sustain injuries, and did not breach his duty of care owed to Patricia McGrath. Instead, as outlined above, her injuries were caused by her own negligence.

Thus, the Court finds in favor of Fogarty on the negligence claims. Moreover, because Fogarty is not negligent, Patrick Fogarty cannot be successful on his loss of consortium claim.

A. Negligence

1. Legal Standard

The standard for determining negligence in this context is whether the shipowner exercised reasonable care under the circumstances. *See Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630 (1959); *see also Monteleone v. Bahama Cruise Line, Inc.*, 838 F.2d 63, 64-65 (2d Cir. 1988) ("Although some older cases called for a higher degree of care aboard ship, it is now clear in this Circuit that the appropriate standard is one of reasonable care under the circumstances." (citing *Rainey v. Paquet Cruises, Inc.*, 709 F.2d 169, 172 (2d Cir. 1983))). This duty of care, however, does not render the vessel owner the insurer of his guest's safety. *See Monteleone v. Bahama Cruise Line, Inc.*, 838 F.2d 63, 64–65 (2d Cir. 1988); *In re Cornfield*, 365 F. Supp. 2d at 276 (internal citations omitted). In order to establish a limitation of liability in a maritime negligence action, the court must employ a two-step analysis: "'First, the court must determine what acts of negligence or conditions of unseaworthiness caused the accident. Second, the court must determine whether the shipowner had knowledge or privity of those same acts of negligence or conditions of unseaworthiness.'" *Hercules Carriers, Inc. v. Claimant State of Fla., Dep't of Transp.*, 768 F.2d 1558, 1563-64 (11th Cir. 1985) (*quoting Farrell Lines, Inc. v. Jones*, 530 F.2d 7, 10 (5th Cir. 1976)); *accord Guglielmo*, 897 F.2d at 61; *In re Sea Wolf Marine Towing & Transp.*, No. 03 cv 5578 (KMW)(THK), 2007 WL 3340931, at *2 (S.D.N.Y. Nov. 6, 2007); *In re Vulcan Materials Co.*, 369 F. Supp. 2d 737, 741 (E.D.Va. 2005); *Lockheed Martin Corp. v. Unknown Respondents*, No. 5:02-CV-734 (NPM/GJD), 2007 WL 965451, at *4 (N.D.N.Y. Mar. 29, 2007); *In re Livolsi*, No. 3:03-CV-1763, 2005 WL 3675967, at *4 (D. Conn. Mar. 22, 2005). Under this standard, a "[c]laimant must demonstrate by a preponderance of the evidence that Petitioner was negligent." *In re Cornfield*, 365 at 276 (E.D.N.Y. 2004). Moreover, "[i]f a claimant establishes that negligence caused the injury, then the burden shifts to the petitioner to establish that there was no neglect, privity, or knowledge on his part." *Id.*; *accord In re Livolsi*, 2005 WL 3675967, at *4.

The elements to establish a claim of negligence under maritime law are the same as the elements of negligence under common law. *See Petition of Kinsman Transit Co.*, 338 F.2d 708, 721 (2d Cir. 1964); *In re Livolsi*, 2005 WL 3675967, at *4; *In re Cornfield*, 365 at 276. Under common law, a plaintiff must establish the following elements to prove negligence: (1) duty, (2) breach of duty, (3) causation and (4) damages. *See Cornfield v. Cornfield*, 156 F. App'x 343, 344 (2d Cir. 2005); *see also Petition of Kinsman Transit Co.*, 338 F.2d at 721.

2. Application

As discussed *supra*, Patricia McGrath alleges that Fogarty was negligent because he did not provide sufficient lighting, did not give sufficient guidance to Patricia on her trip to the restroom, failed to warn passengers of the defects and conditions on the boat, and allowed the passengers to board a boat that was not seaworthy. However, the Court disagrees with Patricia McGrath and finds that Fogarty was not

negligent based upon the evidence established at trial.

First, as the shipowner, Fogarty did have a duty to exercise reasonable care. However, Fogarty did not breach that duty. The evidence clearly established that the boat was seaworthy, as nothing in the record indicated that the boat was unsafe to board. Patricia Fogarty herself testified that the boat was not so unstable that she would lose her balance. (Tr. Aug. 2, 2011, PM1, 57-58.) Moreover, passengers on the boat, such as Erica Johnson, believed that Fogarty could operate the boat safely. (Tr. Aug. 2, 2011, AM2, at 16.) In addition, as stated *supra*, the Court finds that the boat was sufficiently lighted and that the pathway to the bathroom on the boat was not inherently dangerous. For example, as stated by Joanna Stack, the path to the bathroom "[w]as not a climb. It's just two little stairs. It wasn't that difficult." Similarly, allowing Marzigliano to sit on the deck and watch the fireworks in an area that blocked the entrance to the steps to the restroom was not negligent. Fogarty could not reasonably foresee that, rather than simply asking for Marzigliano to move, Patricia Fogarty would straddle him and attempt to climb over him to get to the steps. *See, e.g.*, *Guida v. 154 W. 14th St. Co.*, 13 A.D.2d 695, 696, 213 N.Y.S.2d 919 (App. Div 1961) ("[t]here was no causal relationship between any duty on the part of the defendants with respect to providing adequate and safe means to exit and the injuries sustained by plaintiff. Defendants could not have reasonably foreseen that a person in the circumstances in which plaintiff found himself would attempt to climb the fence. Plaintiff was not in an emergent situation. He was in a position of absolute safety, although subject to inconvenience. There is no reason to believe that passers-by would not have assisted him. Had he called for such aid, he would not have been injured."); *see also Addolorato v. Safeguard Chem. Corp.*, 177 A.D.2d 680 681-82, 577 N.Y.S.2d 74, 75 (App. Div. 1991) ("Under the circumstances of this case, we find, as a matter of law, that the appellants could not reasonably foresee that Addolorato would attempt to climb over a barbed-wire fence and injure himself in the process."); *Rubscam v. Alexander*, 177 A.D.2d 484, 485 575 N.Y.S.2d 698, 700 (App. Div. 1991) ("Under the circumstances presented by this case, we find, as a matter of law, that the appellants could not reasonably foresee that the plaintiff would climb over the wall of the condominium complex and jump down onto its grounds, thereby injuring himself."); *Mack v. Altmans Stage Lighting Co.*, 98 A.D.2d 468, 470 N.Y.S.2d 664, 668 (App. Div. 1984) ("the failure of the defendant to properly anchor the ladder had nothing to do with plaintiff's attempt to reach the street via the rope").[10] Thus, the Court finds that Fogarty did not breach his duty of reasonable care to his guests, including Patricia McGrath.

However, even if Fogarty breached his duty to provide reasonable care to his passengers, Patricia McGrath cannot prove causation. The testimony established that prior to her fall Patricia McGrath was sitting on Marzigliano's lap, she asked him for assistance and subsequently fell as she was removing herself from Marzigliano's lap. She has failed to present any evidence that Fogarty had any interaction with Patricia McGrath while she was removing herself from Marzigliano's lap. Moreover, because

---

[10] Any suggestion that Fogarty was negligent in the manner in which he served alcohol on his boat during the party is also unsupported by the factual record. Similarly, to the extent claimants suggest in their claims that Fogarty violated "various safety statutes which are incorporated into the United States Laws and administered by the United States Coast Guard," claimants have failed to offer any credible evidence of any such violations.

this Court has found that the boat was sufficiently lighted, the pathway to the bathroom was not dangerous and that the boat was seaworthy, Patricia McGrath cannot prove causation based on poor lighting or the conditions of the boat. In short, claimants have failed to prove any negligence on the part of Fogarty by a preponderance of the evidence.

### B. Loss of Consortium

Patrick McGrath asserts a derivative tort claim for loss of consortium. Fogarty argues that loss of consortium claims are not permitted in maritime cases. Fogarty's Amended Proposed Findings of Fact and Conclusions of Law, July 28, 2011, ECF No. 23 (citing *In re Amtrak Sunset Ltd. Train Crash in Bayou Canot, Ala. on Sept. 22, 1993*, 121 F.3d 1421. 1428-29 (11th Cir. 1997), and *Michaels v. Carnival Cruise Lines*, No. 04-22913-CIV, 2005 WL 3706388, at *4 (S.D. Fla. Jan. 4, 2005)). However, this proposition of law has been met with mixed results in the Second Circuit. *See Friedman v. Cunard Line Limited*, 996 F. Supp. 303, 309-314 (S.D.N.Y. 1998) (concluding, after an in-depth analysis of Second Circuit and Supreme Court case law, there can be no loss of consortium or loss of society causes of action where injury is caused on the high seas); *but see In re: Air Crash at Belle Harbor, New York on November 12, 2001*, No. MDL 1448(RWS), 2006 WL 1288298, at *18-21 (S.D.N.Y. May 9, 2006) (distinguishing *Friedman* because the case at bar was in territorial waters and because of a different reading of the cases and statutes involved).

However, even assuming the loss of consortium claim is permitted in the case at bar, Patrick McGrath's loss of consortium claim is moot because it is derivative of Patricia McGrath's negligence claims which are without merit. *See Goldman v. MCL Cos. of Chi., Inc.*, 131 F. Supp. 2d 425, 427 (S.D.N.Y. 2000) ("It is well established . . . that a loss of consortium claim is not an independent cause of action . . . and may only be maintained . . . pursuant to the primary tort.") (internal quotation marks and citations omitted); *O'Gorman v. Holland*, No. 97 Civ. 0842(WHP), 2000 WL 134514, at *3 (S.D.N.Y. Feb. 3, 2000) ("A loss of consortium claim is not an independent cause of action, but is derivative in nature").

### IV. CONCLUSION

For the reasons set forth herein, the Court concludes, after carefully considering the evidence introduced at trial, the arguments of counsel, and the controlling law on the issues presented, that Patricia McGrath and Patrick McGrath have not shown by a preponderance of the evidence that Paul Fogarty was negligent. Thus, the Court finds in favor of Paul Fogarty on all claims, and he is entitled to exoneration from liability. The Clerk of the Court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: March 30, 2012
       Central Islip, New York

\* \* \*

Paul Fogarty is represented by David R. Horing and Esq., Guerric S.D.L. Russell, Esq. of Nicoletti Horing Campise Sweeny & Paige, Wall Street Area, 88 Pine Street, 7th Floor, New York, New York, 10005.

Patrick and Patricia McGrath are represented by Stephen H. Peskin, Esq. of Tolmage, Peskin, Harris & Falick, 20 Vesey Street, Suite 700, New York, New York, 10007.